**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ROY G. CLARKE, for himself and | § | |
| all others similarly situated, | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | Cause No. 5:24-CV-744 |
| | § | |
| FROST BANK and FRIDGE & | § | |
| RESENDEZ, P.C., | § | |
|     *Defendants* | § | |

---

## COMPLAINT – CLASS ACTION

---

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Roy G. Clarke, Plaintiff, complaining of Frost Bank and Fridge & Resendez, P.C., Defendants, and for cause of action respectfully shows as follows:

### NATURE OF ACTION

1.    This is an action for damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (FDCPA) and for monetary, injunctive and declaratory relief under related state law claims, including under the Texas Debt Collection Act, TEX. FIN. CODE §392.101, *et seq*. (TDCA).

### INTRODUCTION

2.    This lawsuit seeks to curb abuse of the judgment revival process in Texas state courts. The practice challenged in this lawsuit has allowed Defendants to pursue debtors over time-barred judgment debts long after they expired.

3.      Under Texas law, a creditor whose judgment has become dormant after 10 years can save it through two different legal proceedings, one within the same lawsuit and one filed as a new suit. Whichever method the creditor chooses, it must be 1) timely brought within a two-year revival period, 2) initiated with the same personal service of process that is required of a new lawsuit or a writ, and 3) diligently pursued.

4.      For years now, in hundreds of lawsuits, Frost Bank and its debt collector Fridge & Resendez, P.C. have been taking short cuts. They revive the Bank's old judgments by filing a two-page motion as if it were a normal filing in a live, ongoing suit (it is not). Sometimes (but not always), they mail it to the defendant, likely to the address they had on file at the time of judgment 10 to 12 years earlier. There is never service of process. At some point, they get a judge to sign an order granting the motion to revive. Sometimes (but not always), Defendants mail a notice of hearing to the defendant a few days or weeks in advance. But it appears that many times, they just walk up and get a signature.

5.      This does not nearly cut it. A dormant judgment is in legal purgatory, and the revival process decides whether it rises up to live again or remains frozen forever, unenforceable and effectively uncollectible. With the stakes being at least 10 more years of executions and encumbrances, courts have rightly held creditors to the same due process requirements that apply to bringing a lawsuit and obtaining a judgment in the first place.

6.      Defendants know this from their own experience. Five years ago, Frost Bank won an appeal and revived a dormant judgment because Defendants, before asking for an order of revival, had timely and diligently effected personal service of citation on the judgment

debtors and given them time to answer.[1] One week ago, they lost an appeal to the Plaintiff, Roy Clarke, and had their revival reversed because they had not done the same for him.[2]

7.    In between the two decisions, at least five other court of appeals concurred, adding to what was already codified in the rules and had long been required by courts. If it were ever unclear about the type of process and the level of service required to begin a judgment revival proceeding, that debate is over—and Defendants are on the wrong side.

8.    The implications are far-reaching. If Defendants' judgment revivals over years were invalid from the start—and by all appearances they were—then their judgments, most of which are long past the point of revival, are invalid, too.[3] That necessarily renders them all but uncollectible. Defendants' attempts to collect them despite their expiration—the letters, threats of legal action, charging of judgment interest, offers of settlement, the encumbrance if not seizure of debtors' property—are all unlawful under the Fair Debt Collection Practices Act and the Texas Debt Collection Act. Without a valid revival, Defendants have been collecting or trying to collect time-barred debts and have been misrepresenting the very existence and nature of their judgment debtors' legal obligation—which is none.

9.    Plaintiff, for himself and many of Frost Bank's other judgment debtors, files this lawsuit to end Defendants' gaming of the Texas legal system and the impermissible debt collection it has allowed.

---

[1] *Frost Nat'l Bank v. White*, No. 14-18-00437-CV, 2019 WL 16021803 (Tex. App.—Houston [14th Dist.] Apr. 16, 2019, no pet.) (mem. op.).

[2] *Clarke v. Frost Nat'l Bank*, No. 08-23-00310-CV (Tex. App.—El Paso June 26, 2024, no pet. hist.) (mem. op.).

[3] *See* note 18, below; *see also PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012) (citing, among others, *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84-85 (1988)) (holding that a state court judgment is void when there is a complete lack of service in violation of due process).

## JURISDICTION AND VENUE

10.     This Court has jurisdiction of the subject matter of this suit under 28 U.S.C. §§1331 (federal question) and 1337 (interstate commerce) and 15 U.S.C. §1692k (FDCPA). Under 28 U.S.C. §1367(a), this Court has supplementary jurisdiction over all other claims asserted herein, including claims arising under the laws of the State of Texas, because those claims are so related to the FDCPA claims that are within the Court's original jurisdiction that they form part of the same case and controversy.

11.     This Court has general personal jurisdiction over Defendants because both are incorporated in Texas, Frost Bank as a Texas state bank and Fridge & Resendez as a Texas professional corporation. In addition, Defendants maintain their principal places of business in Texas and conduct all or substantially all of their business activities in Texas.

12.     Venue is proper in the Western District of Texas under 28 U.S.C. §1391(b)(1) and (2) because Defendants reside for venue purposes in San Antonio, Bexar County, Texas and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred there.

## PARTIES

13.     Plaintiff, Roy G. Clarke, is an individual resident of San Antonio, Texas.

14.     Defendant Frost Bank, formerly known as The Frost National Bank (herein "Frost Bank," "Frost" or "the Bank"), is a Texas state bank with a principal place of business at 111 W. Houston Street, San Antonio, Texas 78205. It may be served with process through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

15.     Defendant Fridge & Resendez, P.C. (herein "F&R") is a Texas professional corporation with a principal place of business at 111 Soledad Street, Suite 1700, San Antonio, Texas 78205. It may be served with process there through its registered agent, John Resendez.

## FACTUAL ALLEGATIONS

A.     <u>Judgment Revival in Texas</u>

16.     Frost Bank, like many large financial institutions, owns thousands of state court judgments. Over time, if an execution of the judgment is not issued within 10 years, it goes dormant.[4]

17.     Reviving a dormant judgment and preserving the right to collect on it requires bringing either an "action of debt," which is a new suit under a new cause number, or a scire facias (pronounced *sai*·ur *fa*·see·*uhz)* in the original suit.[5] Scire facias is an arcane phrase and proceeding—it is presented in the form of a motion or application more often than not—that requires a debtor to appear in the lawsuit and show cause why the judgment should not be revived for another 10 years.[6]

18.     A new lawsuit must obviously be initiated through personal service of a citation on the defendant debtor. But Texas Rule of Civil Procedure 154 and numerous state and federal

---

[4] *See* TEX. CIV. PRAC. & REM. CODE §34.001(a) ("If a writ of execution is not issued within ten years after the rendition of a judgment ..., the judgment is dormant and execution may not be issued on the judgment unless it is revived.").

[5] *Id*. §31.006.

[6] *Compare Hawthorne v. Guenther*, 461 S.W.3d 218, 222 (Tex. App.—San Antonio 2015, pet. denied) ("An 'action [of] debt' is a new and independent suit that does not seek execution of the former judgment, but instead, seeks recovery of the full amount of the debt owed under the former judgment.") *with Pharus Funding, LLC v. Solley*, No. 06-20-00090-CV, 2021 WL 1680206, at *2 n.2 (Tex. App.—Texarkana Apr. 29, 2021, no pet.) (mem. op.) (scire facias is "a continuation of the original suit" that requires judgment debtor "to show cause why a dormant judgment against that person should not be revived.") (internal citations omitted).

court decisions require that personal service of process—either a citation or a writ of scire facias—is equally required in a scire facias.[7]

19.    This is only fair. "Through the requirement that the writ of scire facias be served in accordance with the Texas Rules of Civil Procedure governing the service of writs, the judgment debtor is ensured of receiving actual notice of the application ... [and] is afforded the opportunity to assert any defenses it may have to reviving the judgment, including payment."[8] It is only "[a]fter the judgment debtor has answered, or the time for filing an answer has expired, [that] the judgment creditor may set a hearing ... and obtain an order reviving the judgment."[9]

---

[7] TEX. R. CIV. P. 154 ("The scire facias and returns thereon ... shall conform to the requisites of citation and the returns thereon, under the provisions of these rules."); *see Clarke*, No. 08-23-00310-CV, at *6-*8; *Pharus Funding, LLC* v. *Sanchez*, No. 14-20-00418-CV, 2022 WL 288122, at *3 (Tex. App.—Houston [14th Dist.] Feb. 1, 2022, pet. denied) (mem. op.) ("weight of authority" was "decidedly contrary" to position that only service under Rule 21[a] was required"; "a dormant judgment debtor must be personally served with the scire facias writ or citation, as the law requires for service of citations generally"); *Pharus Funding, LLC v. Suson*, No. 02-20-00325-CV, 2021 WL 4783261, *3 (Tex. App.—Fort Worth Oct. 14, 2021, no pet.) (mem. op.) (affirming denial of revival application in part for judgment creditor's "utter failure to follow the procedures required by Rule [] 154"); *Cornejo v. Int'l Bank of Commerce*, No. 03-21-00019-CV, 2021 WL 4296416, at *6-*7 (Tex. App.—Austin Sept. 22, 2021, no pet.) (mem. op.) (evaluating whether scire facias writ had been diligently issued and served so as to relate back to a timely filed application to revive; also holding substituted service was only available after diligent attempts at personal service of writ); *Pharus Funding, LLC v. Garcia*, No. 01-20-00411-CV, 2021 WL 3556679, at *6-*7 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, no pet.) (mem. op.) ("on filing an application for a writ of scire facias, the applicant must ask the court clerk for issuance of citation ... [and] is responsible for obtaining service of the citation."); *Solley*, 2021 WL 1680206, at *3-*4 (writ of scire facias "must be served on the judgment debtor in accordance with the rules governing writs and process"); *F.D.I.C. v. Davis*, No. CV-H-92-3759, 2006 WL 8445383, at *2 (S.D. Tex. July 28, 2006) (requiring FDIC to show that it served defendant pursuant to Rule 154 to revive judgment); *F.D.I.C. v. Bauman*, No. 3:90-CV-0614-H, 2004 WL 1732933, at *2 (N.D. Tex. July 30, 2004) (refraining from ruling on scire facias motion because the plaintiff had failed to demonstrate service on the defendant under Rule 154); *see also White*, 2019 WL 1602180, at *3 (reciting that Frost Bank's revival application and citations had been personally served on the judgment debtors before concluding that "Frost satisfied the statutory prerequisites to revival").

[8] *Clarke*, No. 08-23-00310-CV, at *8 (quoting *Solley*, 2021 WL 1680206, at *1 n.3).

[9] *Id*.; *see also White*, 2019 WL 1602180, at *3.

B.    Frost Bank vs. Clarke

20.    For years, Roy Clarke had a personal checking account at The Frost National Bank, now Frost Bank. He used the account for personal, family and household purposes.

21.    In 2006, the account became overdrawn, the Bank sued him in a Bexar County court at law, and on May 6, 2010 it obtained a judgment against him for about $5,000.

22.    After 10 years without execution, the judgment became dormant on May 6, 2020.

23.    The same month, Frost Bank filed a motion in the same cause number to revive the judgment, making it a scire facias rather than an action of debt.[10]

24.    More than three years later, on July 6, 2023, Bexar County Court at Law No. 5 signed an order granting the Bank's motion, "reviving and extending the judgment for the full period provided by law."

25.    Clarke, now represented, asked the trial court to reconsider its order. When the revival was sustained, Clarke appealed.

26.    On June 26, 2024, the Eighth Court of Appeals of Texas reversed the order of revival because the Bank had failed to personally serve Clarke with either a citation or writ of scire facias to commence the revival action.[11]

27.    More than that, it had tried to evade its obligation by calling its filing a mere motion, rather than the scire facias proceeding it was prosecuting against Clarke. "The bank

---

[10] *Clarke*, No. 08-23-00310-CV, at *4 (citations omitted). Not that the distinction affects the level of service required, since a new lawsuit obviously must have service of citation, too. *See* TEX. R. CIV. P. 99, *et seq.*; *Hughes v. McClatchy*, 242 S.W.2d 799, 804 (Tex. App.—Eastland 1951, writ ref'd n.r.e.) (judgment creditor "had the duty, in order to toll the statute of limitation" in a suit to revive judgment, "to continue to exercise ordinary diligence to obtain service on appellee until service was obtained").
[11] *Clarke*, No. 08-23-00310-CV, at *8-*9.

cannot contravene the scire facias process by simply calling it a motion then applying Rule 21a service methods because it was only a motion, regardless of past practice on the part of judgment creditors."[12]

C.    A History of "Silent" Judgment Revivals

28.    In Clarke's litigation against Frost Bank, he discovered that the Bank and its third-party debt collector, Fridge & Resendez, P.C., regularly "contravene the scire facias process" in reviving stale, dormant judgments they would otherwise be powerless to collect. In court filings and argument, Defendants admitted to skipping over the service of process, asserting that the revival process "is something for which *all notice and hearings are completely gratuitous*."

29.    True enough, court docket sheets throughout the State reveal that Defendants have revived hundreds of state court judgments over the years without having personally served the defendant judgment debtor with a citation or writ ordering them to appear and show cause why the judgment should not be revived.

30.    Worse, in many of Defendants' revivals, they appear to have secured court orders entirely ex parte by conducting a hearing or shepherding through a proposed order without even giving the most basic Rule 21a notice to the debtor.

31.    One recent revival proceeding demonstrates Defendants' typical course of action. Attached as Exhibit "A" hereto is a true and correct copy of the publicly available court docket sheet for Cause no. 2000-CI-12667, *Frost National Bank vs. Samuel Rodriguez*, in the

---

[12] *Id.*, at *8.

57th District Court of Bexar County, Texas. According to Exhibit "A," Frost acted by and through John Resendez of F&R.

32.    After receiving court permission for substituted service, the Bank obtained a default judgment against Samuel Rodriguez on March 30, 2001. No execution issued, and the judgment became dormant on March 30, 2011.

33.    On July 21, 2011, the Bank filed its standard motion to revive the judgment. There was no issuance of a citation or writ, much less personal service of it. The Bank did, however, file a certificate of service, which Plaintiff surmises indicates the motion was mailed to Mr. Rodriguez. Whether it was received is unknown.

34.    About five months later, on December 20, 2011, the Bank appears to have simply approached the trial court and obtained an order granting the revival. No hearing had been set on the docket, the Bank did not file a hearing notice or fiat, and there is no indication of any notice being sent to Mr. Rodriguez.

35.    This is even less notice than Roy Clarke had for his "hearing," if one can call it that. In Plaintiff's litigation, Defendants filed a notice of hearing and mailed Clarke a copy, but they did so just days before the hearing, and to his old house, no less—this in a still-dormant lawsuit in which there had been exactly one other filing in the prior 13 years.

36.    In any event, in March 2021, within 10 years of the purported revival of Mr. Rodriguez's judgment, Frost Bank requested a writ of execution. If it had been issued by the clerk and delivered to the sheriff for service, it could have renewed the judgment for 10 years. The docket sheet indicates that the sheriff's fee was not paid, however, so the writ was apparently not prepared or delivered. As a result, the judgment again became dormant on December 20, 2021.

37.    With the deadline to bring an action to revive approaching on December 20, 2023, on November 13 the Bank filed its second motion to revive and a proposed order. The very next entry on November 28 reflects the trial court signing an order granting the motion to revive. There are no docket sheet entries in between the motion and order reflecting any court settings or notices of hearing. Although details are lacking, this second revival appears to be another ex parte hearing or submission.

38.    With the judgment revived, at least on paper, Defendants attempted execution again in January 2024 and filed *Abstract of Judgment* in the Bexar County real property records in June 2024. The abstract purports to create a judgment lien on Mr. Rodriguez's property, and it declares that he owes the full amount of the original judgment, $12,895.48, plus 23 years of 10% interest.

39.    Post-judgment interest on state court judgments compounds annually. As of the date of this Complaint, then, **Defendants are actively attempting to collect from Samuel Rodriguez $118,538.68—this under a 2001 judgment for $13,000 that went dormant <u>13 years ago</u> and then lapsed entirely and became time-barred at least <u>11 years ago</u>.**

40.    From the Bank's own briefing in the underlying Clarke litigation and appeal, Plaintiff believes that Defendants get away with this practice so often by characterizing their revival motions as just a normal part of the judgment enforcement process.

41.    If that is what Defendants are telling judges,[13] it is not accurate. Post-judgment remedies are available, obviously, to enforce live, subsisting, enforceable judgments. And

---

[13] Another troubling aspect of Defendants' revival practice is the fact that their ex parte revivals appear to be universally granted, despite the obvious failure to obey the scire facias rules of service, giving time for defendants to answer, and scheduling a hearing. This strongly implies their equal failure to inform judges of the legal requirements of the arcane process. Hopefully that is not the case, but it is hard to see any other explanation.

some remedies, like turnover, can be obtained ex parte. But that is not the case once a judgment becomes dormant, at which point it is *un*enforceable, pending its revival. Since this is Defendants' primary excuse, the distinction between live and dormant judgments cannot be emphasized enough: "A debtor on a judgment that has become stale through dormancy is entitled to rely on the legal implications of dormancy and rest assured that no execution may be pursued absent the judgment's revival."[14]

42.     **Notice in our system of justice is not "gratuitous," it is foundational.** "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."[15] "A dormant judgment debtor is entitled to actual notice through personal service"[16] and should be "afforded the opportunity to assert any defenses the judgment debtor may have to the judgment's revival."[17]

43.     With its judgment for Roy Clarke, the Eighth Court of Appeals joined numerous Texas courts of appeal, as well as federal courts interpreting Texas rules of civil procedure, in rebuking this unconscionable practice of "silent" judgment revival.

---

[14] *Sanchez*, 2022 WL 288122, at *3; *see* TEX. CIV. PRAC. & REM. CODE §34.001(a) (prohibiting execution of dormant judgments); *Clarke*, No. 08-23-00310-CV, at *6-*7 (rejecting Frost Bank's attempt to justify ex parte revivals with case law speaking to the ex parte remedies used to enforce live judgments, an argument already "considered and rejected by several of our sister courts"); *Holt v. Sakowitz Inc.*, No. 01-05-01194-CV, 2007 WL 1299680 (Tex. App.—Houston [1st Dist.] April 27, 2007), *op. withdrawn sua sponte* (May 23, 2007) ("trial court abused its discretion by entering the turnover order because [creditor] did not ... show[] that the judgment was not dormant"); *Patton v. Crisp White*, 11 S.W.2d 826, 828 (Tex. Civ. App.—San Antonio 1928, writ dism'd) ("A dormant judgment is not a 'valid, subsisting judgment' and will not support a writ of garnishment."); *see also In re Hamel*, 180 S.W.3d 226, 231 (Tex. App.—San Antonio 2005, orig. proceeding) (vacating turnover order enforcing a void judgment).

[15] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *accord Bevers v. Brodbeck*, No. 07-04-0475-CV, 2006 WL 2795347, at *2 (Tex. App.—Amarillo Sept. 29, 2006, pet. denied) (mem. op.) ("Notice of a suit is a fundamental component of due process to which all litigants are entitled. Like a citation, a scire facias brings a person before the court by giving her notice of the suit").

[16] *Sanchez*, 2022 WL 288122, at *2.

[17] *Solley*, 2021 WL 1680206, at *1 n.2.

D.    <u>Lacking Effective Revivals, Defendants Have Been Attempting to Collect On Time-Barred Debts.</u>

44.    The requirements of scire facias revival are now firmly established in Texas jurisprudence—they are service of process, timeliness, and diligence—and Defendants' failure to comply with one or more are found on the face of dozens of docket sheets.

45.    Roy Clarke's appeal has established that Defendants' revival of the 2010 judgment was invalid. And because any revival at this point would be too late, **the Bank's 2010 judgment against Clarke was forever time-barred and unenforceable after 12 years, on May 6, 2022, as a matter of law.**[18] Defendants never received the order they were anticipating to retroactively validate their debt collection during the two-year dormancy period and beyond.

46.    Here is a summary of that debt collection. On June 13, 2023, Frost Bank mailed Clarke a collection letter. At this time, the judgment was not only dormant, but it was more than a year past the revival window and Defendants had not acted in three years to move their motion forward—circumstances that have been fatal to revival.[19]

47.    Despite this, the Bank nonetheless threatened to "review" (read: find and seize) "your personal assets through court order," represented that post-judgment interest was

---

[18] *See Huff v. Huff*, 648 S.W.2d 286, 288 (Tex. 1983) (superseded in part by statute) (unrevived "final judgment ... bec[a]me void of lawful effect by operation of law"); *Suson*, 2021 WL 4783261, at *2, *14 (failed revival made end of the revival window "the judgment's expiration date"); *Trad v. Colonial Coins, Inc.*, No. 14-02-00172-CV, 2003 WL 124680, at *1 (Tex. App.—Houston [14th Dist.] Jan. 16, 2003, no pet.) (mem. op.) (judgment can become "forever dormant" if not timely revived); *Williams v. Short*, 730 S.W.2d 98, 100 (Tex. App.—Houston 1987, writ ref'd n.r.e.) (after revival window had closed, "judgment is ... not only dormant but forever barred"); *see also PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (Judgment void, not just voidable, when "the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act."); Joshua Cottle, FRIDGE & RESENDEZ P.C., *A Primer on Renewing Judgments and Reviving Dormant Judgments*, State Bar of Texas CLE, Collections & Creditors' Rights 22:9 (2024) ("The penalty for failing to timely revive can be severe ...: 'forever dormant' judgments cannot be executed.")

[19] *See Suson*, 2021 WL 4783261, at *12-*14.

"mounting" and will be "owe[d]," and represented the Bank's willingness to settle the judgment debt for an agreed sum without advising Clarke that the debt was not then subject to execution or judicial enforcement. A true and correct copy of the collection letter, along with a copy of an identical second letter dated September 20, 2023, is attached hereto as Exhibit "B."

48.     On July 6, 2023, the Bank finally obtained its order of revival. On July 20, Defendants filed *Abstract of Judgment* in the Bexar County property records. The filing encumbered Clarke's real property with a judgment lien. It also represented that interest was accruing on part of the judgment debt and that the full amount of the judgment plus interest was "still due." A true and correct copy of the abstract is attached hereto as Exhibit "C."

49.     On August 1, 2023, Clarke learned of the revival by his discovery of *Abstract of Judgment*. He retained an attorney, the undersigned, who sought to persuade Frost's debt collector to voluntarily vacate the order of revival in the interest of justice, so Clarke could prepare and present a defense to a revival that was faulty and untimely on its face.

50.     Unsuccessful with F&R, Clarke had to file a motion for new trial to make his case to the trial court. Unsuccessful again, Clarke had to file an appeal. This time he would win.

51.     The litigation activities which Defendants engaged in after the May 6, 2022 deadline to revive in furtherance of collecting their purported judgment debt include the following:

    i.    setting a hearing on or about June 26, 2023;

    ii.    sending Clarke notice of hearing (ineffectively) on June 28, 2023;

iii.    attending a "hearing" on July 6, 2023 and presenting an order to the trial court, presumably without acknowledging the lack of formal service on Clarke and the improper, unfair notice of hearing;

iv.    refusing to vacate the order granting revival after being advised on August 1, 2023 of the late or unreceived notice of hearing;

v.    opposing Clarke's motion for new trial (MNT) through court filings and at a live evidentiary hearing;

vi.    subpoenaing Clarke and an excessive array of documents for the MNT hearing, reasonably requiring Clarke to move for protection from the trial court;

vii.    submitting informal briefing to the trial court after the hearing; and

viii.    defending the faulty revival on appeal.

52.    On September 20, 2023, the Bank mailed Clarke another collection letter containing the same threats and representations that were in the June 13 letter.

53.    Defendants' continued debt collection through litigation compelled Clarke to hire legal representation to resist their collection activities. Clarke has paid or incurred at least $40,758.79 in attorney's fees and expenses to date in post-revival proceedings, including his appeal.

## CAUSES OF ACTION

54.    Plaintiff incorporates the foregoing allegations into each cause of action below as if fully set forth therein.

55.    All conditions precedent to the bringing of this action and the claims asserted herein have occurred or been performed, satisfied or waived.

### Count One:
### Fair Debt Collection Practices Act

56.    Roy Clarke's original overcharge obligation to Frost Bank was a consumer debt that was reduced to judgment. F&R is a debt collector under the FDCPA.

14

57.     F&R violated the FDCPA through a pattern and practice of renegade debt collection in the courts. The judicial revival process is itself an activity of debt collection, having the sole purpose of preserving for future execution, enforcement and collection a judgment debt that, but for the revival, would have expired and become forever barred. F&R conducted its revival proceedings unfairly by violating Texas procedural law and basic norms of due process. It took advantage of judgment debtors' lack of knowledge, ability, experience, capacity and/or means in order to have an apparent (though ineffective) legal basis for its future attempts to collect the judgment debt. This course of conduct was advanced, upon information and belief, by implied or express inaccurate, misleading or reckless representations about the legal status of the judgment debt, the legal requirements of revival, and Defendants' entitlement to relief.

58.     In Clarke's particular case, F&R extended and exacerbated this illegitimate debt collection in post-order trial court proceedings and then an appeal. In the end, F&R was wrong. Its conduct was publicly reprimanded because its legal strategy was an attempt to "contravene the scire facias process" and its basic but important protections.

59.     With the judgment revival having been invalidated, the judgment debt is expired and all acts collecting on such a debt that is not legally owed, or if owed is only owed as a result of Defendants' abusive, unlawful revival proceeding, violates the FDCPA. The debt was time-barred, notwithstanding any order of revival Defendants can point to.

60.     With respect to F&R, its collection activities include its encumbering of Clarke's property with a false judgment lien. F&R filed an abstract of judgment to cloud Clarke's title in order to secure a time-barred, unenforceable judgment. This was also a threat to seize or sell his property based on an improper court proceeding and a time-barred debt.

61.     The described acts, omissions and conduct violate the FDCPA in numerous ways. The statute prohibits false, deceptive or misleading representations or means in connection with the collection of any debt. This includes falsely representing the character or legal status of any debt, threatening to take any action that cannot legally be taken, and representing or implying that nonpayment will result in the seizure of any property when such seizure would be unlawful.

62.     The FDCPA prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any debt.

63.     The FDCPA prohibits any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

64.     12 C.F.R. section 1006.26, a regulation of the Consumer Financial Protection Bureau clarifying and enforcing the FDCPA, orders that "A debt collector must not bring or threaten to bring a legal action against a consumer to collect a time-barred debt." A time-barred debt is defined as a debt for which the applicable statute of limitations has expired. F&R prosecuted the revival against Clarke after May 6, 2022, the deadline to revive.[20]

65.     For debtors like Samuel Rodriguez whose judgments were revived more than once, the later revival proceedings were unlawful legal actions to collect on time-barred debt, the first revival being invalid under Texas law and the debt having long expired.

66.     For F&R's violations, Clarke seeks to recover from it his actual damages, additional damages of $1,000, and his costs and attorney's fees.

---

[20] Even if the two-year window is not a hard cutoff, like a statute of repose, any right F&R might have had to continue the revival proceeding past that point vanished by its utter lack of diligence in the revival proceeding itself—37 months of inaction, to be exact—and in the service of (non-existent) process. *See Suson*, 2021 WL 4783261, at *14; *Cornejo*, 2021 WL 4296416, at *6-*7.

**Count Two:**
**Texas Debt Collection Act**

67.     Frost Bank is a creditor and a debt collector under the TDCA. F&R is a debt collector. In addition, F&R is a third-party debt collector, in evidence of which it obtained and has on file with the Texas Secretary of State a debt collector surety bond.

68.     Clarke incorporates herein the allegations from the FDCPA count against F&R as applicable to both Defendants under the TDCA. These described acts, omissions and conduct violate the TDCA in numerous ways.

69.     The statute prohibits false, deceptive or misleading representations in debt collection, including using a name in debt collection other than the true legal name of the debt collector; misrepresenting the character of a consumer debt or the debt's status in a judicial proceeding; representing that a debt will be increased by the addition of charges if not authorized by contract or statute; or using any other deceptive means to collect a debt.

70.     The TDCA prohibits a creditor from using an independent debt collector if the creditor has actual knowledge that the debt collector repeatedly engages in practices prohibited by the Act.

71.     The TDCA prohibits debt collectors from attempting to collect interest that is not legally chargeable to the consumer.

72.     A third-party debt collector may not engage in debt collection without having a surety bond for $10,000 in favor of any person who is damaged by a violation of the TDCA.

73.     The TDCA prohibits debt collectors from threatening to take an action prohibited by law, which would include executing on or enforcing a time-barred judgment or a judgment that was only alive due to Defendants' improper judicial activities. It also prohibits

threatening that nonpayment will result in the seizure of a debtor's property without proper court proceedings.

74.    In addition to the violations asserted under the FDCPA count, Frost Bank violated the TDCA through the two collection letters to Clarke. The first letter was sent when the judgment was conditionally unenforceable during the dormancy period, the second letter was sent after expiration of the revival period when the judgment had become forever barred, and both letters contain deceptive representations and misleading or impermissible threats.

75.    Frost's letters threatened to take an action prohibited by law, namely future judgment enforcement in the courts. It was also an attempt to collect post-judgment interest that Frost had misrepresented was continuing to accrue. Judgment enforcement could not occur and interest was not legally owed because the 2010 judgment was expired and unenforceable by May 6, 2022 at the latest.

76.    Frost Bank pursued revival and its year-long defense of revival, all of which was debt collection, under a former name that was not its true legal name.

77.    F&R, a third-party debt collector, engaged in debt collection from Clarke before it obtained and filed a surety bond with the Secretary of State.

78.    For Defendants' violations, Clarke seeks to recover his actual damages from them, not less than $100 for each violation of the TDCA, and his costs and attorney's fees.

**Count Three:**
**Texas Deceptive Trade Practices Act**

79.    A violation of the TDCA is a deceptive trade practice actionable under the Texas Deceptive Trade Practices-Consumer Protection Act, Chapter 17, Texas Business & Commerce Code (DTPA). Accordingly, Clarke, in addition to the remedies sought under the

TDCA, seeks to recover up to three times his actual damages as additional damages upon a showing of knowing conduct, along with his court costs and reasonable and necessary attorneys' fees.

## Count Four:
## Suit to Quiet Title

80.    F&R's filing of *Abstract of Judgment* encumbers Clarke's real property, including his homestead, with an apparent, though invalid, judgment lien. This is a cloud on his title and causes injury by its mere existence. It also threatens to inhibit future sales or financing of real property. Clarke sues to have title to his real property quieted by order extinguishing and/or removing the judgment lien.

## APPLICATION FOR PERMANENT INJUNCTION

81.    The TDCA provides for injunctive relief to prevent or restrain violations, and the DTPA provides for an order enjoining the contested acts. Clarke requests that the Court's judgment include a permanent injunction prohibiting Defendants from ever again collecting or attempting to collect on his expired judgment.

## CLASS ALLEGATIONS

82.    Plaintiff brings this claim on behalf of a class under Rule 23 of the Federal Rules of Civil Procedure.

83.    The class consists of A) debtors under Texas state court money judgments in favor of Frost Bank that were B) revived by court order granting a motion, application or other filing within the same lawsuit, provided that C) the revival of judgment had one of the characteristics described below and D) the debtor received or was subject to one or more communications or acts of debt collection in connection with the judgment since July 3, 2020.

84.    For purposes of element C), a revival proceeding qualifies if:

i)    *Lack of service*: the Bank did not have a citation or writ of scire facias personally served on the debtor at the commencement of the revival proceeding; or

ii)    *Untimely*: the motion or other filing initiating the revival process was filed less than 10 years before,[21] or the court order granting revival was signed more than 12 years after, the latest of the following events:

    a.    the original judgment,
    b.    the most recent date of issuance of a writ of execution, and
    c.    the most recent date of signing of an order reviving the judgment; or

iii)    *Ex parte*: Defendants conducted a hearing, presented an order to the trial court for signature, or set its motion to revive for a hearing by submission without delivering advance notice to the debtor by Rule 21a service at least 3 business days in advance (plus three days if mailed); or

iv)    *Without bond*: F&R participated in revival proceedings before _____, 2022 (date of filing its surety bond, currently unknown).

85.    For purposes of element D), if the debtor was named as a debtor or obligor in a recorded abstract of judgment or other filing creating a judgment lien or security interest in the debtor's real or personal property that purports to have been in effect since July 3, 2020, the debtor was subject to debt collection within the applicable time period, regardless of the date of the filing.

86.    Plaintiff proposes that in the interest of judicial economy, the class be divided into two subclasses based on the whether actual damages are sought.

i)    Subclass I members, expected to be virtually all of the class, would not assert individualized actual damages and would seek monetary relief only in the form of court-determined, class-wide statutory awards under the FDCPA or TDCA,

---

[21] Premature filing, that is, bringing a revival while the judgment is still within its 10-year execution period, was not raised earlier in this Complaint, as it was not an issue with Clarke's revival and occurs less frequently than revivals granted after the revival deadline. Still, it happens. For example, in *The Frost National Bank v. Bill Moss*, Cause No. C-1-CV-00-253316, in the County Court at Law No. 2 of Travis County, Texas, Defendants filed a motion to revive on May 26, 2022, only nine years after they received an order granting revival on April 5, 2013. *See Hawthorne*, 461 S.W.3d at 222 ("Any action brought before April 28, 2003," the end of the 10-year execution period, "has no effect [on revival] because the judgment was not yet dormant[.]").

depending on which collection activities they were subjected to and, for limitations purposes, when their judgment was revived.

ii)    Subclass II members, including Clarke, would additionally assert actual damages resulting from the improper revival, including any payments made toward the alleged judgment debt after it was time-barred and any legal expenses incurred in reviewing, participating in, or resisting Defendants' revival litigation, judgment enforcement, or debt collection. Such members would require a damages hearing.

87.    All class members, regardless of actual damages, would be entitled to injunctive relief prohibiting the further execution or other enforcement of their lapsed judgment and an order extinguishing any judgment liens arising from the judgment.

88.    In support of a class action, Plaintiff would show that the class is so numerous that joinder of all members is not practicable.[22]

89.    There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant question is whether revival of a dormant state court judgment without personal service of process or an order of revival obtained after the two-year window to revive can serve to revive the judgment and subject the judgment debtor to the threat of enforcement for another 10 years.

90.    Plaintiff's claim is typical of the class members. All claims would be based on the same essential factual and legal theories. Clarke's Frost Bank judgment was revived

---

[22] The number of debtors who have been subjected to Defendants' judgment revival practice is presently unknown but expected to be in the hundreds. Plaintiff's preliminary search of the public abstract of judgment filings in 40 Texas counties has identified 376 abstracts that were filed on the basis of a Frost Bank judgment revival. A sample of corresponding lawsuit docket sheets that could be accessed showed a universal lack of service of process, and many show timeliness and ex parte issues. Therefore, the number of abstracts is believed to roughly correspond to the number of potential class members. It should be noted that the abstract filings in the other 214 counties, including Harris, Travis, Fort Bend, and El Paso, could not be word searched and have not been included in the above number. Defendants are in the best position to identify their own revival proceedings, of course, and the class will be refined as necessary and identified in due course.

without any service of process on him; it was revived long after the expiration of the revival period; the Bank did not even pursue an order of revival for years; when it did, its hearing notice was ineffective and it proceeded effectively ex parte; and part of Clarke's revival proceeding occurred when F&R did not have a surety bond on file. In short, his claim exemplifies Defendants' legal failures, followed by their unlawful collection letters and lien filing.

91.     As described in detail above, Defendants acted on grounds that apply generally to the class, and final injunctive and/or declaratory relief is appropriate respecting the class as a whole. Defendants have proceeded similarly if not identically in the vast majority of revival cases, from the initial filing, to how they obtain the order, to the post-revival abstract of judgment and form collection letter. Defendants' explanation, defense and legal justification are expected to apply to the class as a whole.

92.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained experienced, diligent counsel who is prepared and willing to prosecute this claim.

93.     A class action is superior for the fair and efficient adjudication of this matter, in that individual actions are not economically feasible in almost every case. As Clarke's underlying lawsuit demonstrates, it costs thousands of dollars to retain legal counsel to fight an improper revival in the trial court, and tens of thousands to prevail if it goes up on appeal. The amount of trial court fees, not to mention appellate fees, would overwhelm many of the judgment debt amounts.

94.     Class members are also unlikely to be aware of their rights. If the process of scire facias revival of judgments and the rules attendant to them is virtually unknown amongst lawyers, even litigators, then they are invisible to the lay judgment debtor. Also, the age of the

judgments—necessarily more than 10 years old and in some cases several decades old—along with the fact that many were taken by default, raises the possibility of a debtor's ignorance of them, inability to pay them off, or both.

95. Congress intended for class actions to be a principal enforcement mechanism of the FDCPA.

**PRAYER**

WHEREFORE, Plaintiff, Roy G. Clarke, respectfully prays that Defendants be cited to appear, that a class be certified, and that after final adjudication on the merits Plaintiff and the class members receive judgment against Defendants awarding:

1) statutory damages or penalties as set by law or awarded in the Court's discretion;

2) actual damages in all persons sustaining them;

3) DTPA additional damages of up to three times actual damages if there is a requisite finding of knowledge;

4) an order quieting title by extinguishing and/or removing qualifying judgment liens and declaring them to be null and void;

5) a permanent injunction barring execution or other enforcement of any qualifying judgment;

6) attorney's fees, litigation expenses, costs of court, and judgment interest as allowed by law; and

7) all other and further relief, general or special, at law and in equity, to which Plaintiff and the class are justly entitled.

Respectfully submitted,

LAW OFFICE OF DAVID T. DENTON, P.C.
4040 Broadway, Suite 240 (mail) and 425 (office)
San Antonio, Texas 78209
Tel.: (210) 460-6500
Email: ddenton@dtdfirm.com

By: _____
    David T. Denton
    State Bar No. 24055396
ATTORNEY     FOR     PLAINTIFF,     ROY
G. CLARKE, AND PROPOSED ATTORNEY
FOR THE CLASS